STATE OF NORTH CAROLINA v. RASHAD DONTE JORDAN

No. COA10-1432

(Filed 4 October 2011)

**1. Constitutional Law—Miranda rights—waiver—findings binding**

The trial court's findings of fact were accepted as binding in an appeal from a motion to suppress statements to the police raising the issue of whether defendant invoked or raised his *Miranda* rights. A video of the interview that was seen by the trial court contained inaudible portions and was not available on appeal, yet was essential in the trial court's consideration of the motion. A transcript of the interview was prepared only from an enhanced audio version, not the original video used by the court.

STATE v. JORDAN

[216 N.C. App. 112 (2011)]

## 2. Constitutional Law—Miranda rights—waiver—video not provided on appeal

The trial court did not err by concluding that defendant voluntarily and knowingly waived his *Miranda* rights where the trial court's findings demonstrated that it considered what the officer reasonably believed defendant to be communicating, although without the original video of the interview the appellate court could not properly analyze several of the findings concerning the circumstances of the waiver.

## 3. Constitutional Law—Miranda rights—waiver—voluntary— conclusions supported by findings

The trial court's findings supported its conclusions that defendant was fully informed and advised of his *Miranda* rights, fully understood those rights, waived them voluntarily and knowingly, never made a clear and unequivocal assertion of his right to counsel, and never unambiguously invoked his right to remain silent.

## 4. Confessions and Incriminating Statements—motions to suppress denied—conclusions supported by findings

There was no error in a first-degree murder prosecution where the trial court denied defendant's motions to suppress and allowed defendant's confession to be presented to the jury. Although several of defendant's arguments regarding his motions to suppress could not be reviewed on appeal because the original video was not before the appellate court, the trial court's findings supported its conclusions.

## 5. Evidence—transcript of recording—poor sound quality

There was no prejudicial error in a first-degree murder prosecution where the jury saw a videotaped interview at which defendant confessed and the jury was allowed to read a transcript made from enhanced audio without hearing the audio. A different result was not likely without the transcript in light of the other evidence.

## 6. Evidence—exchange between defendant and reporter—not prejudicial

There was no prejudice in a first-degree murder prosecution where the jury was presented with a portion of an exchange between defendant and a television reporter but the evidence against defendant was overwhelming.

STATE v. JORDAN

[216 N.C. App. 112 (2011)]

Appeal by defendant from judgment entered 16 December 2009 by Judge R. Stuart Albright in Superior Court, Caldwell County. Heard in the Court of Appeals 12 April 2011.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Steven M. Arbogast, for the State.*

*Marilyn G. Ozer, for defendant-appellant.*

STROUD, Judge.

Defendant appeals his conviction for first degree murder. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show that in January 2007, defendant told Mr. Ronald Barnes he was going to kill Mr. Barnes's cousin, Cedric Harshaw, known as "Mickey." On 19 January 2007, defendant knocked on Ms. Joelle Michaux's front door looking for Mr. Harshaw. Ms. Michaux told defendant where Mr. Harshaw currently lived. Mr. Timothy Jolly, Mr. Makiaya Powell, and defendant then drove to Mickey's home. Once at Mr. Harshaw's home, defendant and Mr. Harshaw got into an argument. Mr. Powell then got out of the car with a gun. Defendant took the gun from Mr. Powell, and said, "Mickey, you got my money?" Mr. Jolly then saw defendant begin shooting and heard four gunshots, and Mr. Harshaw fell. Mr. Harshaw died of "internal hemorrhag[ing] due to multiple bullet wounds." That night, Ms. Marrissa Patterson saw defendant at West End Convenient Store, and defendant told her he had killed someone.

In the early morning hours of 20 January 2007, Sergeant Daryl Cornett of the Lenoir Police Department interviewed defendant. During the interview, defendant confessed to shooting Mr. Harshaw. Sergeant Cornett also collected defendant's clothing which "reveal[ed] the presence of particles characteristic to gunshot residue[.]"

On 29 January 2007, defendant was indicted for murder. On 16 November 2009, by superseding indictment, defendant was indicted for murder. Defendant was tried by a jury which found him guilty of first degree murder. The trial court sentenced defendant to life imprisonment without parole. Defendant appeals.

## II. Motions to Suppress

On 3 November 2009, defendant filed a motion to suppress statements he had made while he was being interviewed by the police. On

or about 24 November 2009, defendant amended his motion to suppress arguing his interview with the police should be suppressed because "he asserted his right to remain silent AND . . . he invoked his right to counsel." On 11 December 2009, the trial court ordered that

> defendant's statements, "I don't want to talk no more man. Just fingerprint me and take me to the Magistrate's Office[,]" and anything the defendant said to law enforcement officers after he made those statements [are suppressed.] Except as specifically set forth herein, the defendant's Motion to Suppress and amended Motion to Suppress are denied in each and every respect.

Defendant first contends that "the trial court committed reversible error by denying . . . [his] suppression motions[.]" (Original in all caps.)

A. Standard of Review

> It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. In addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the findings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724, (citations, quotation marks, and brackets omitted).

B. Invocation of Right to Remain Silent and Right to Counsel

[1] Here, though defendant had signed a waiver of rights form, the trial court concluded that when defendant stated during his interview, "I don't want to talk no more man. Just fingerprint me and take me to the Magistrate's Office[,]" defendant invoked his right to remain silent; defendant contends that he invoked his right to remain silent and his right to counsel before this point in time. Defendant directs our attention to the transcript of his interview with police whereupon defendant is presented with a waiver of rights form:[1]

---

1. While defendant contests the admissibility of this transcript at trial, we note that defendant stipulated to its use for purposes of his motion to suppress.

**STATE v. JORDAN**

[216 N.C. App. 112 (2011)]

Jordan:  I need my rights. I ain't signing my away right, (Inaudible).

Cornett:  (Inaudible).

Jordan:  No promises or threats have been made to me (Inaudible) of any kind (Inaudible). Naw man, I ain't doin' that. (Inaudible).

Cornett:  You don't want to talk about it at all?

Jordan:  I mean look man.

Cornett:  Look, you know I can't talk to you without . . .

Jordan:  I know.

Cornett:  Without you signing saying it's ok. You know.

Jordan:  I know but that ain't right. Ya'll ain't even wanting to question me man without a lawyer present. My people's already getting me a lawyer cuz.

Cornett:  Ok.

Jordan:  Know what I'm saying?

Cornett:  I understand. I mean . . .

Jordan:  Do what you want. (Inaudible).

Cornett:  I can't ask you, (Inaudible). That's the problem. I can't ask you questions. You know I can't ask you questions.

Jordan:  (Inaudible) Answers.

Cornett:  Exactly and you do have that right; you, you answer what you want to. I mean it's not like if you don't answer it right or don't give me (Inaudible) throw you in the floor or nothing, you know better than that.

Defendant and Sergeant Cornett then began discussing what defendant was being charged with and the facts of the case.

As to a defendant invoking his right to counsel the United States Supreme Court has stated:

[W]e held in *Miranda v. Arizona*, 384 US 436, 469-473, 16 L Ed 2d 694, 86 S Ct 1602, (1966), that a suspect subject to custodial interrogation has the right to consult with an attorney and to have

counsel present during questioning, and that the police must explain this right to him before questioning begins. . . .

The right to counsel recognized in *Miranda* is sufficiently important to suspects in criminal investigations, we have held, that it requires the special protection of the knowing and intelligent waiver standard. If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. This second layer of prophylaxis for the *Miranda* right to counsel is designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights. To that end, we have held that a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present. . . .

The applicability of the rigid prophylactic rule of *Edwards* requires courts to determine whether the accused actually invoked his right to counsel. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.

Rather, the suspect must unambiguously request counsel. As we have observed, a statement either is such an assertion of the right to counsel or it is not. Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

. . . .

**STATE v. JORDAN**

[216 N.C. App. 112 (2011)]

To recapitulate: We held in *Miranda* that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

*Davis v. United States*, 512 U.S. 452, 457-62, 129 L. Ed. 2d 362, 370-73 (1994) (citations, quotation marks, and brackets omitted).

The Court went on to extend its rationale in *Davis* regarding the right to counsel to the right to remain silent:

In the context of invoking the *Miranda* right to counsel, the Court in *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), held that a suspect must do so unambiguously. If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.

The Court has not yet stated whether an invocation of the right to remain silent can be ambiguous or equivocal, but there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel at issue in *Davis*. Both protect the privilege against compulsory self-incrimination, by requiring an interrogation to cease when either right is invoked.

There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that avoids difficulties of proof and provides guidance to officers on how to proceed in the face of ambiguity.

*Berghuis v. Thompkins*, ___ U.S. ___, ___, 176 L. Ed. 2d 1098, 1110-111 (2010) (citations, quotation marks, ellipses, and brackets omitted).

Here, Sergeant Cornett's interview with defendant was videotaped. After interviewing defendant and reviewing the videotape, Sergeant Cornett "determined that the quality of it was somewhat substandard due to the noise of the air handling unit, air conditioning

unit at the Police Department in relation to where the microphone was." Agent Jonathon Dilday of the crime laboratory in Raleigh, North Carolina was asked "to clarify the audio and make it more intelligible." Agent Dilday made a CD of the audio in the videotape ("enhanced audio"). Sergeant Cornet and Sharron Hendrix, a secretary of the Lenoir Police Department, prepared a transcript based on the enhanced audio, not the original videotape. While defendant provides and directs this Court's attention to the transcript, defendant has failed to provide the videotape. Yet the videotape was an essential piece of evidence in the trial court's consideration of the motion to suppress, as it found:

7. The Court was able to see the entire videotaped interview with the defendant (state's exhibit VD number 1) that took place on 20 January, 2007, which included watching the defendant sign the written waiver of his Miranda rights (state's exhibit VD number 3).

8. While the audio was less than perfect, the picture quality was clear allowing the Court to observe the body language, demeanor, conduct and actions of all participants in the interview.

9. The defendant read all of the written waiver (state's exhibit VD number 3).

10. The defendant did not sign state's exhibit VD number 3 immediately, but instead hesitated reading parts of the written waiver out loud to himself, and talking out loud to himself making reference to his rights.

11. At this time the defendant did not make a clear and unequivocal assertion of his right to counsel, and did not unambiguously invoke his right to remain silent.

12. Considering the defendant's initial waiver of his Miranda rights, and considering his subsequent hesitation to sign the written waiver, Detective Cornett asked clarifying questions to the defendant to determine if he was going to talk with Detective Cornett, and told the defendant he could not talk to the defendant.

13. As Detective Cornett was informing the defendant that he, Detective Cornett, could not ask the defendant any questions, the defendant picked up a pencil on his own, signed the written waiver, and then pushed the signed written waiver (state's exhibit VD number 3) to Detective Cornett.

14. The defendant clearly understood his Miranda rights as demonstrated, in part, by his hesitation to sign the written waiver (state's exhibit VD number 3) after he read it.

. . . .

18. Based on the totality of the circumstances by his words and actions, the defendant freely, intelligently, voluntarily, and knowingly waived his Miranda rights, including his right to counsel and his right to remain silent, after having those rights read to him free from any coercion, duress, or threats.[2]

Many of the trial court's findings of fact are based upon viewing the videotape of the interview, particularly as "the audio was less than perfect[.]" Without the videotape, we are unable to review the trial court's findings of fact as to the "body language, demeanor, conduct and actions of all participants in the interview." Furthermore, without viewing the videotape in conjunction with the transcript, as the trial court did, it is unclear when defendant is speaking to the police, reading the waiver of rights form to himself, and signing the waiver of rights form. Reading the transcript without viewing the videotape leaves us no way of knowing *when* defendant made the statements he purports invoke his rights; for instance, we do not know if defendant made the aforementioned statements and then signed the form, thereby waiving those prior statements, or if defendant signed the form and then made further statements regarding his rights in order to reiterate his position. While certainly in every case a visual recording is not required to determine whether defendant invoked or waived his Miranda rights, here the videotape is essential, in light of the largely inaudible portions of the transcript and the trial court's reliance upon the visual aspect of defendant's interview. As we do not have the videotape before us, and therefore are presented with an incomplete record, we must accept the findings of fact as binding. *See State v. Ali*, 329 N.C. 394, 412, 407 S.E.2d 183, 194 (1991) ("The defendant has failed to bring forward a record sufficient to allow proper review of this issue and has failed to overcome the presumption of correctness at trial.")

[2] Based upon these findings of fact, we must consider the trial court's conclusion of law that defendant "freely, intelligently, volun-

2. Finding of fact 18 is actually a conclusion of law. "Where a trial court makes a conclusion of law but erroneously labels it a finding of fact, the conclusion is nonetheless reviewed *de novo*." *State v. Davison*, 201 N.C. App. 354, 361, 689 S.E.2d 510, 515 (2009), *disc. review denied*, ___ N.C. ___, 703 S.E.2d 738 (2010).

tarily, and knowingly waived his Miranda rights, including his right to counsel and his right to remain silent, after having those rights read to him free from any coercion, duress, or threats." In this determination, we must consider what "a reasonable police officer in the circumstances would understand" defendant to be communicating, *see Davis*, 512 U.S. at 459, 129 L. Ed. 2d at 371, which necessarily includes the "body language, demeanor, conduct and actions" of defendant in communicating, particularly when such evidence is available and relied upon by the trial court. The trial court's findings of fact demonstrate that it considered what Sergeant Cornett would reasonably believe defendant to be communicating and fully support its conclusion of law.

C.  Honoring Defendant's Right to Cease Questioning

Defendant next argues that

> [o]nce Miranda warnings have been given, if a suspect indicates 'in any manner, and at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.' *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). Interrogation may be resumed only if the officers have 'scrupulously honored' the individual's 'right to cut off questioning.' *Michigan v. Mosely*, 423 U.S. 96, 104 (1975); *State v. Murphy*, 342 N.C. 813, 823, 467 S.E.2d 428, 434 (1996).

(Brackets omitted). Without the videotape of the interview, as noted above, this Court cannot properly analyze whether "officers . . . scrupulously honored . . . [defendant's] right to cut off questioning," (quotation marks omitted), or even consider the precursor question of exactly when defendant did invoke his rights, thereby requiring questioning to cease.

D.  Deceptive Tactics

Defendant next argues that

> Detective Cor[n]ett first reminded Mr. Jordan of their relationship. He persevered with the interrogation even when Mr. Jordan repeatedly declared he would not sign the form and did not wish to waive any of his rights. Detective Cor[n]ett succeeded in convincing Mr. Jordan to waive his rights only by giving him the false legal advice that as an alternative he could answer some questions and not others. *Miranda* instructed: 'any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant

did not voluntarily waive his privilege.' *Id.* at 476. As Rashad Jordan was both tricked and cajoled after repeatedly asserting his refusal to waive his rights to silence and to assistance of counsel, this Court must find his constitutional rights to the effective assistance of counsel under the Sixth Amendment and right against self-incrimination under the Fifth and Fourteenth Amendments were violated.

Again, without a videotape this Court is unable to review the trial court's findings of fact as to when defendant invoked his rights to silence and to counsel, so we certainly cannot determine whether defendant was "tricked and cajoled after repeatedly" invoking these rights in violation of the Constitution.

E. Conclusions of Law

[3] Defendant next argues that the trial court's conclusions of law were erroneous in light of the evidence before it. Once again, as we do not have the evidence which was before the trial court, we are unable to consider this contention. However, we can consider whether the findings of fact support the conclusions of law. *See Campbell,* 188 N.C. App. at 704, 656 S.E.2d at 724. Beyond those findings of fact specifically already listed the trial court further found:

3. On 20 January 2007, while in custody, Detective Cornett orally advised the defendant of his rights as required by *Miranda v. Arizona,* 384 US 436 (1966) (hereinafter "Miranda rights").

4. The defendant understood his Miranda rights, including his right to remain silent and his right to counsel.

. . . .

16. The defendant signed the written waiver (state's exhibit VD number 3) freely, intelligently, voluntarily, and knowingly, free from any threats, coercion or duress.

. . . .

30. The defendant never made a clear and unequivocal assertion of his right to counsel at any time during the interview on 20 January, 2007 or at any other time on 20 January, 2007.

. . . .

32. The defendant never unambiguously invoked his right to remain silent during the interview on 20 January, 2007 until the defendant stated, 'I don't want to talk no more man. Just finger-

print me and take me to the Magistrate's Office." *See* state's exhibit VD number 4 at page 1571, lines 9 and 10).

The trial court's conclusions of law ultimately determine that "defendant was fully informed and advised of his Miranda rights," "defendant fully understood his Miranda rights," "defendant waived his Miranda rights freely, intelligently, voluntarily, and knowingly, free from any threats, coercion or duress," "defendant never made a clear and unequivocal assertion of his right to counsel[,] and "defendant never unambiguously invoked his right to remain silent during the interview on 20 January, 2007 until the defendant stated, 'I don't want to talk no more man. Just fingerprint me and take me to the Magistrate's Office.' " Accordingly, the findings of fact do support the conclusions of law.

F. Defendant's Statements at Trial

[4] Lastly, defendant contends that it was prejudicial error for the trial court to allow his confession to killing Mr. Harshaw made during his interview with the police to be presented before the jury as the State did not meet "its burden of proving a knowing and intelligent waiver of rights, resulting in a voluntary statement."[3] As we have already determined that we are unable to review several of defendant's arguments regarding his motions to suppress, but that the trial court's findings of fact support the conclusions of law, we must ultimately conclude that the trial court properly denied defendant's motions to suppress until he unequivocally invoked his right to remain silent. Accordingly, it was not error for the trial court to allow defendant's confession to be heard before the jury. Defendant's arguments regarding his motions to suppress are overruled.

III. Transcript

[5] During defendant's trial, the jury saw the videotaped interview and received a copy of the transcript which was prepared based upon the enhanced audio. The jury was instructed to use the transcript only "to corroborate previous testimony[.]" The jury did not hear the enhanced audio from which the transcript was made. Defendant argues that "the trial court erred by allowing an inaccurate transcript of the defendant's interrogation to be published to the jurors[.]" (Original in all caps.) We first note that it would be virtually impossi-

---

3. To the extent that defendant's argument addresses the trial court admitting his confession to the police through the transcript made by the police, we will address these issues in the next section. Here, we focus solely on whether defendant's confession should have come in generally or whether it should have been suppressed.

ble for the jury to consider whether the transcript was accurate, as they heard only the videotape's audio, which was apparently of very poor quality.

However, even assuming *arguendo* that it was error for the trial court to allow the jury to use the transcript prepared from the enhanced audio, where they did not hear the enhanced audio, we cannot say that it prejudiced defendant in light of Mr. Barnes's testimony that defendant told him he was going to kill his cousin, Mr. Harshaw; Ms. Michaux's testimony that defendant came to her house the day of the murder looking for Mr. Harshaw; Mr. Jolly's eyewitness testimony wherein he saw and heard defendant demand money from Mr. Harshaw, saw defendant take a gun from Mr. Powell, saw defendant begin shooting, and heard four shots; Ms. Patterson's testimony that defendant told her he had killed someone; Detective Cornett's testimony that defendant told him he killed Mr. Harshaw; and the gunshot residue found on defendant's clothing. *See State v. Paige*, 272 N.C. 417, 424, 158 S.E.2d 522, 527 (1968) ("[V]erdicts and judgments are not to be set aside for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, and that a different result likely would have ensued, with the burden being on the appellant to show this." (citations omitted)). This argument is overruled.

### IV. Jurors Hear Exchange between Defendant and Reporter

**[6]** Lastly, defendant contends it was error for the jury to be presented with "[a] portion of [an] exchange" between defendant and "a television reporter[.]" Again, even assuming *arguendo* that this evidence was erroneously admitted, in light of the overwhelming evidence against defendant, defendant cannot show prejudice as to this issue. *See id.*

### IV. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges McGEE and BEASLEY concur.