INMAN, Judge.
 

 *678
 
 Defendant Kevin Deshaun Dixon ("Defendant") appeals from judgments entered following a jury verdict finding him guilty of discharging a firearm into an occupied vehicle in operation inflicting serious injury, felony murder, and possession of marijuana with the intent to sell. Defendant argues that the trial court erred in: (1) failing to enter written orders on several motions to suppress; (2) admitting into evidence inadmissible and unduly prejudicial photographs; and (3) permitting the victim's fiancé, an eye witness, to identify Defendant in court. After careful review, we hold that Defendant has failed to demonstrate error.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 On 26 November 2014, Maria Monje ("Monje") and her fiancé Andres Alberto Martinez Trochez ("Martinez Trochez") were driving through a neighborhood in Concord, North Carolina, looking to buy marijuana. Monje was driving the car, and Martinez Trochez was in the front passenger seat. As they were searching for a dealer, the two spotted a group of five to eight men standing by a silver Ford Mustang with a black racing stripe. One of the men waved and shouted at Monje and Martinez Trochez, beckoning them to pull over. They did, and the man approached the passenger side of their vehicle. The man asked to borrow Martinez Trochez's cellphone; Martinez Trochez asked if the man had any marijuana. At this point, the man opened Martinez Trochez's car door,
 
 *236
 
 pulled a small black gun out from under his shirt, held it to Martinez Trochez's chest, and demanded money. While Monje searched the backseat for cash, the man shot Martinez Trochez. Seeing her fiancé had been shot, Monje immediately took control of the vehicle and drove away from the men gathered by the Mustang. As she was fleeing, at least two more shots were fired at her car by another man, shattering a rear passenger window.
 

 Monje drove to a nearby police station, where officers attempted to save Martinez Trochez's life. EMS arrived a short time later and pronounced Martinez Trochez dead. Monje described for police the location of the shooting and the silver Mustang the shooters were congregated around when she and Martinez Trochez had pulled over.
 

 *679
 
 Law enforcement immediately broadcast the description of the Mustang and began searching for the vehicle in the area of the shooting. Detective Patrick Merritt ("Detective Merritt") drove Monje to the scene of the crime while the search for the Mustang was underway. While Monje and Detective Merritt were en route, another officer located a silver Mustang with a black racing stripe on a road a few dozen yards away from the crime scene. The officer ran the license plate and discovered the Mustang was registered to Defendant.
 

 Meanwhile, at the crime scene with Detective Merritt, Monje identified Charles Mann ("Mann") as one of the men present at the shooting. The detective then drove Monje to the location of the Mustang, where she positively identified the vehicle as the one from the crime scene. Police also searched Monje's vehicle, discovering shell casings and bullets matching a .45 caliber gun.
 

 In the course of the investigation into Martinez Trochez's homicide, investigators asked Monje to review a photographic line-up of five men. Monje identified two men, one of whom was Defendant, as the possible shooter. Monje's tentative identification, combined with Defendant's ownership of the Mustang, led police to focus on Defendant as their prime suspect.
 

 Six days after the shooting, on 2 December 2014, warrants for Defendant's arrest were issued. He was arrested the following day and indicted on 15 December 2014.
 

 While Defendant was incarcerated pending trial, a sheriff's deputy at the Cabarrus County detention center found a "kite," or a letter passed between inmates, bearing Defendant's initials on the floor outside the cluster of cells housing him. The kite discussed in detail Defendant's case, mentioned Mann as the State's best evidence against Defendant, and asserted that Mann needed to keep quiet, as he was Defendant's alibi. Defendant later asked the sheriff's deputy what happened to the kite, as "he had written some shit on it that he shouldn't have."
 

 Police were also provided with a second letter found by a cleaning crew that had worked in the home where Defendant's Mustang was registered (the "Cleaning Crew Letter"). That letter, addressed to Defendant's brother, discussed in detail the evidence the State had collected showing Defendant's guilt, and mentioned that Mann's testimony would be detrimental to his defense. The letter also stated that Defendant would be convicted if Monje and Mann testified. The letter provided names and contact information of people who could be paid to prevent those two witnesses from testifying.
 

 *680
 
 Other evidence collected by investigators included a cell phone taken from Defendant. The phone contained two photographs of firearms (the "Gun Photos"), including one attached to a message sent from Defendant's phone saying "I stay wit dem irons," referring to the guns. A third photograph recovered from the phone showed Defendant and another man leaning against the hood of a silver Mustang with a black racing stripe on the street where Martinez Trochez was shot (the "Mustang Photo"). Both men in the photo are displaying the hand sign for the number "4" with their left hands, while the man on the right is displaying a closed right hand with his middle finger extended.
 

 Defendant filed several pre-trial motions to suppress the above evidence, including: (1) Monje's identification of Defendant in the photo line-up (the "Line-Up Motion"); (2) Monje's in-court identification of Defendant
 
 *237
 
 (the "ID Motion"); (3) the kite (the "Kite Motion"); (4) Monje's identification and descriptions of the silver Mustang (the "Mustang Motions"); and (5) the photographs, text messages, and location data retrieved from Defendant's cell phone (the "Cell Phone Motion").
 
 [1]
 
 With one exception, the trial court rendered oral orders denying these motions; however, the trial court entered no written orders. The judge at various points described his oral findings and conclusions as "sketches" of those he instructed the prosecutor to include in a proposed written order, and he suggested that the parties offer additional proposed findings of fact for him to consider. But nothing in the record suggests that the findings and conclusions the judge recited from the bench were not, in fact, the trial court's actual findings and conclusions from the evidence and applicable law.
 

 During trial, when the State sought to introduce the Gun and Mustang Photos, Defendant objected, asserting that the photos were inadmissible under Rules 402, 403, and 404 of our Rules of Evidence. Defendant's counsel argued that the Gun Photos were inadmissible because they did not match Monje's description of the murder weapon and were otherwise inadmissible character evidence prohibited by Rule 404(a) of the North Carolina Rules of Evidence. Defendant's counsel argued that the Mustang Photo was inadmissible because the hand gestures by the men in the photograph could be construed as gang signs by the jury and therefore constituted inadmissible character evidence prohibited by Rule 404(b). The trial court overruled Defendant's objections but instructed the State not to ask any witness the meaning of the hand
 
 *681
 
 gestures in the Mustang Photo; the trial judge announced his ruling from the bench but entered no written order.
 

 On 25 May 2017, after two days of deliberation, the jury returned guilty verdicts on the charges of first-degree felony murder, discharging a firearm into an occupied vehicle while in operation inflicting serious injury, and possession with the intent to sell marijuana. The jury found Defendant not guilty of attempted robbery with a firearm.
 

 The trial court arrested judgment on the discharging a firearm charge and sentenced Defendant to life imprisonment without parole for first-degree felony murder. The trial court also sentenced Defendant to a minimum six months and maximum seventeen months imprisonment for possession of marijuana with the intent to sell, which was suspended for 24 months of supervised probation. Defendant gave notice of appeal in open court.
 

 II.
 
 ANALYSIS
 

 Defendant presents three arguments on appeal: (1) the trial court committed reversible error in failing to enter written orders on the various motions to suppress; (2) the trial court erred in admitting the Mustang and Gun Photos; and (3) the trial court impermissibly permitted Monje to provide an in-court identification of Defendant. We address each argument in turn below, and hold that the trial court did not commit error.
 

 a. Suppression Motions
 

 At the outset of this analysis, we note that Defendant's Kite, Cleaning Crew Letter, and Mustang Motions were not submitted to the trial court with supporting affidavits as required by N.C. Gen. Stat. § 15A-977(a). Defendant's failure to file affidavits with these motions is "a waiver on appeal of the right to contest the admission of evidence on either statutory or constitutional grounds."
 
 State v. McQueen
 
 ,
 
 324 N.C. 118
 
 , 128,
 
 377 S.E.2d 38
 
 , 44 (1989). We therefore decline to review the trial court's orders on those motions and dismiss this portion of Defendant's appeal.
 
 See
 

 State v. Holloway
 
 ,
 
 311 N.C. 573
 
 , 577,
 
 319 S.E.2d 261
 
 , 264 (1984) (dismissing an argument on appeal for this reason). Furthermore, it does not appear from the record that the trial court ruled on the Mustang Motions, nor does it appear that Defendant objected to the evidence encompassed by those motions when introduced at trial. Defendant also does not argue plain error. As a
 
 *238
 
 result, Defendant has failed to preserve review of the Mustang Motions on appeal.
 
 State v. Oglesby
 
 ,
 
 361 N.C. 550
 
 , 554-55,
 
 648 S.E.2d 819
 
 , 821 (2007).
 
 *682
 
 When reviewing the failure of a trial court to enter a written order on a motion to suppress, we look first to whether there exists a material conflict in the evidence requiring a finding of fact.
 
 State v. Bartlett
 
 ,
 
 368 N.C. 309
 
 , 312,
 
 776 S.E.2d 672
 
 , 674 (2015). "When there is no conflict in the evidence, the trial court's findings can be inferred from its decision[,]" and findings of fact are not required.
 
 Id.
 
 at 312,
 
 776 S.E.2d at 674
 
 (citation omitted). "[O]ur cases require findings of fact only when there is a material conflict in the evidence and allow the trial court to make these findings either orally or in writing."
 
 Id.
 
 at 312,
 
 776 S.E.2d at 674
 
 .
 

 Regardless of whether findings of fact are required, "it is still the trial court's responsibility to make the conclusions of law ... [and] failure to make any conclusions of law in the record [is] error."
 
 State v. McFarland
 
 ,
 
 234 N.C. App. 274
 
 , 284,
 
 758 S.E.2d 457
 
 , 465 (2014). Such conclusions "require[ ] 'the exercise of judgment' in making a determination, 'or application of legal principles' to the facts found."
 
 Id.
 
 at 284,
 
 758 S.E.2d at 465
 
 (quoting
 
 Sheffer v. Rardin
 
 ,
 
 208 N.C. App. 620
 
 , 624,
 
 704 S.E.2d 32
 
 , 35 (2010) ).
 

 Defendant argues that oral findings and conclusions made by the trial court from the bench are insufficient because the trial judge expressly ordered the State to prepare written orders on the motions and the State failed to do so. We disagree. If a written order is not required and an oral order may be sufficient in certain circumstances,
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 , the failure to go above and beyond that which is required by law does not render an otherwise lawful order erroneous. In other words, a minimally sufficient order is still exactly that-sufficient-even if more was ordered or requested by the trial court. Given this standard, the trial court committed reversible error only if: (1) there are conflicts in the evidence that the trial court failed to resolve either orally or in writing, through an explicit factual finding,
 
 id.
 
 at 312,
 
 776 S.E.2d at
 
 674 ; or (2) the trial court failed to make the necessary conclusions of law on the record.
 
 McFarland
 
 ,
 
 234 N.C. App. at 284
 
 ,
 
 758 S.E.2d at 465
 
 .
 

 Neither the trial transcript nor the court's oral order on the Photo Line-Up Motion noted any conflicts in the evidence, and Defendant points to none on appeal.
 
 [2]
 
 On this record, the trial court was not required to
 
 *683
 
 make findings orally or in writing.
 
 [3]
 

 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . Nonetheless, the trial court made detailed findings of fact supporting its ruling. The trial court concluded as a matter of law that the evidence challenged in the Photo Line-Up Motion was relevant and more probative than prejudicial "after considering all the information before the Court[,]" and that "[t]he line-up was not unduly suggestive as alleged in the motion." Because the trial court's conclusions were supported by its factual findings and those findings were supported by the evidence presented, we hold that Defendant has failed to demonstrate reversible error.
 
 Cf., e.g.
 
 ,
 
 State v. Faulk
 
 , --- N.C. App. ----, ----,
 
 807 S.E.2d 623
 
 , 628-31 (2017) (holding reversible error occurred when the trial court denied a motion to suppress without making a single conclusion of law, applying the law to any facts, or disclosing the rationale for the court's decision);
 
 McFarland
 
 ,
 
 234 N.C. App. at 284
 
 ,
 
 758 S.E.2d at 464-65
 
 (holding the trial court failed to make necessary conclusions of law when it merely recited legal principles rather than drawing legal conclusions by applying those principles to the facts).
 

 The trial court also recited its factual findings in detail when ruling on the ID Motion. Despite these findings, Defendant contends that material conflicts in the evidence
 
 *239
 
 were not resolved in the oral order. Specifically, Defendant asserts that Monje's inability to describe Defendant in detail in a written statement to police or to identify Defendant conclusively in the photo line-up constituted material conflicts in the evidence, insofar as they "materially conflict with Ms. Monje's claim on direct-examination that she had 100% confidence that she could identify [Defendant] on the day of the shooting." We disagree.
 

 "[A] material conflict in the evidence ... [is] one that potentially affects the outcome of the suppression motion."
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . However, the only issues raised by Defendant's evidence point to the reliability of Monje's in-court identification, which was not a question for the trial court:
 

 [A]n identification of the perpetrator of a crime is not inadmissible because the witness is not absolutely certain of the identification, so long as the witness had a reasonable possibility of observation sufficient to permit subsequent identification. Such uncertainty goes to the credibility and weight of the testimony, and it is well established that the
 
 *684
 
 credibility, probative force, and weight of the testimony are matters for the jury.
 

 State v. Moses
 
 ,
 
 350 N.C. 741
 
 , 767,
 
 517 S.E.2d 853
 
 , 869 (1999) (citations, quotation marks, and original alterations omitted). Because the evidence presented, including that pointed to by Defendant,
 
 [4]
 
 did not raise a material conflict for the trial court to resolve in the suppression hearing, it was not required to make factual findings on the record.
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 .
 

 The trial court concluded that the evidence subject to the ID Motion was relevant and passed the balancing test of Rule 403 "after considering all the information before the Court at this time." Because these conclusions were drawn following a recitation of the facts and were based on the findings and evidence, the trial court properly "rendered a legal decision, in the first instance," as to the relevance and admissibility of the evidence at issue.
 
 State v. Baskins
 
 ,
 
 247 N.C. App. 603
 
 ,
 
 786 S.E.2d 94
 
 , 99 (2016) (internal citation and quotation marks omitted). The trial court expressly reached its conclusions by considering the facts and applying the relevant rules of evidence to those facts and therefore did not err in denying the ID Motion.
 
 Cf.
 

 id.
 

 at 609-10
 
 ,
 
 786 S.E.2d at 99
 
 (holding a "conclusion" was not in actuality a conclusion of law where it consisted of a simple statement of law that detention of a motorist for probable cause does not violate the Fourth Amendment followed by a separate statement that the detention in the case was justified).
 

 For the same reason, we also affirm the trial court's ruling on the Statement Motions, which concerned pre-arrest and post-arrest interviews of Defendant by police. Again, the record discloses no conflicting evidence requiring findings of fact, and Defendant points to none on appeal. The trial court still made oral findings of fact, although it was not required to do so.
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . Specifically, the trial court made detailed, numbered findings of fact
 
 *685
 
 concerning the pre-arrest interview, namely that: (1) Defendant met with police; (2) police informed him he was not under arrest and free to leave; (3) Defendant chose not to leave, had his cell phone available to him, and was left alone in the interview room on several occasions; and (4) Defendant's statements in the interview were reduced to writing but never signed by him. From these findings, the trial court concluded that "[D]efendant voluntarily and intelligently and willingly participated in the interview[,]" that he "was not under arrest[,]" and, "under the
 
 *240
 
 totality of the circumstances, [police] were not required to read [D]efendant his
 
 Miranda
 
 rights during this noncustodial interview."
 

 The trial court also rendered oral findings of fact concerning the post-arrest interview, namely that: (1) Defendant was represented by counsel at the time; (2) Defendant requested the interview with police; and (3) Defendant's
 
 Miranda
 
 rights were explained to him and he signed a written waiver of those rights. From these findings, the trial court concluded that " [D]efendant voluntarily-knowingly, voluntarily and willingly waived his
 
 Miranda
 
 rights and his rights to have counsel present and provided a statement to the officers which was reduced to writing[,]" and "[D]efendant's statement should not be excluded as it was made knowingly, voluntarily and willingly after waiving all his constitutional rights related thereto."
 
 [5]
 
 In denying Defendant's Statement Motions, the trial court made detailed findings of fact concerning the two interviews, made conclusions of law that applied the relevant legal principles to those findings, and explained its rationale. The trial court did not commit reversible error in failing to enter a written order on these motions.
 

 The record reflects that no conflicting evidence was presented in the hearing regarding Defendant's Cell Phone Motion, and Defendant points to none. So the trial court was not required to make any findings of fact.
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . But the trial court made findings anyway, and also made the necessary conclusions of law to deny the motion. The trial court found, among other things, that "[D]efendant handed his phone to [a detective]" and "provided the pass code to the detective[;]" when the detective told Defendant he needed to search it for evidence, "[D]efendant complained about the inconvenience of [police] having his phone and that he needed it but never demanded that it be returned." From these findings, the trial court concluded that
 
 *686
 
 "[D]efendant voluntarily provided his phone to the police or to law enforcement[,]" and denied the motion. The trial court provided the necessary rationale for its ruling, including a conclusion from the factual findings that Defendant voluntarily provided police with access to his cell phone.
 

 The trial court also made findings that, at the time Defendant handed his phone to the police, Monje had identified Defendant as a possible suspect, she had identified his Mustang as being present at the crime scene, and Defendant had already made statements to police that he was near the shooting when it occurred. The trial court then made the conclusions of law from these factual findings that "law enforcement had probable cause to seize it
 
 based on the allegations known to them at the time concerning the shooting
 
 [,] ... that it's reasonable to believe that the phone may contain evidence related to the alleged crime and that it would be proper to preserve it for evidentiary purposes[,]" and "that there was probable cause sufficient to search the phone...." (emphasis added).
 
 Cf.
 

 Baskins
 
 ,
 
 247 N.C. App. 603
 
 ,
 
 786 S.E.2d at 99
 
 . In sum, the trial court provided the required rationale for its ruling, found sufficient facts, and applied the law to those findings in rendering conclusions of law.
 
 [6]
 
 As a result, Defendant's argument as to this motion is overruled.
 

 The trial judge referred to his oral findings and conclusions as "sketch[es] of what [he] would like to include" in any written orders and would have "be[en] happy to consider any proposed findings" offered by the parties. However, nothing in the transcript indicates that the judge had not made up his mind on the findings and conclusions that were rendered aloud; rather, it appears the trial judge was merely giving counsel an
 
 *241
 
 opportunity to submit proposed findings and conclusions consistent with those recited orally, as the judge "preserve[d] the right to clarify" his findings and conclusions once proposed written orders were submitted. "A trial court's ruling on an evidentiary point will be presumed to be correct unless the complaining party can demonstrate that the particular ruling was in fact incorrect,"
 
 State v. Herring
 
 ,
 
 322 N.C. 733
 
 , 749,
 
 370 S.E.2d 363
 
 , 373 (1988) (citation omitted), and "[t]here is a presumption of regularity in the trial. ... An appellate court is not required to, and
 
 *687
 
 should not, assume error by the trial judge when none appears in the record before the appellate court."
 
 State v. Phifer
 
 ,
 
 290 N.C. 203
 
 , 212,
 
 225 S.E.2d 786
 
 , 792 (1976) (citation omitted). In light of these presumptions and the explicit findings and conclusions in the transcript before us, we will not construe the trial court's characterization of the same as "sketches" as an intention to enter written orders contrary to the facts found and conclusions reached on the record; nor will we construe its instructions to counsel to do likewise.
 

 b. Admission of the Mustang and Gun Photos
 

 Defendant next argues that the trial court erred in admitting the Mustang and Gun Photos over his objection pursuant to Rules 401, 402, 403 and 404(a)-(b). In reviewing such a decision by a trial court,
 

 we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
 

 State v. Beckelheimer
 
 ,
 
 366 N.C. 127
 
 , 130,
 
 726 S.E.2d 156
 
 , 159 (2012). As for determinations of relevancy, those "technically are not discretionary and therefore are not reviewed under the abuse of discretion standard[.]"
 
 State v. Wallace
 
 ,
 
 104 N.C. App. 498
 
 , 502,
 
 410 S.E.2d 226
 
 , 228 (1991). They are, however, "given great deference on appeal."
 
 Id.
 
 at 502,
 
 410 S.E.2d at 228
 
 (citation omitted).
 

 Neither this Court nor our Supreme Court appears to have set forth a plain statement of the standard of review applicable to rulings regarding Rule 404(a). However, a survey of appellate decisions applying the Rule shows that such review generally follows a
 
 de novo
 
 standard.
 
 See, e.g.,
 

 State v. Walston
 
 ,
 
 367 N.C. 721
 
 ,
 
 766 S.E.2d 312
 
 (2014) (reviewing the exclusion of evidence under Rule 404(a)(1) under an apparent
 
 de novo
 
 standard to determine whether the evidence in question fell within the rule or an exception thereto);
 
 State v. Clapp
 
 ,
 
 235 N.C. App. 351
 
 , 362-63,
 
 761 S.E.2d 710
 
 , 718 (2014) (applying a "loose
 
 de novo
 
 standard of review" to the exclusion of witness testimony under Rule 404(a)(1) ).
 

 Defendant's argument for exclusion of the Mustang and Gun Photos based on Rules 404(a) and (b) is premised on the assumption that possession of a firearm and flashing gang signs "show[ ] bad character and
 
 *688
 
 bad acts." We fail to see how possession of a firearm is indicative of bad acts or bad character-gun ownership is enshrined in the Second Amendment to the United States Constitution, and we do not believe the exercise of that right indicates a person's poor character. Indeed, Defendant's own brief fails to identify any basis for such a conclusion. As for any purported gang signs, we fail to see how the hand signals in the Mustang Photo indicate gang affiliation in any way. As detailed
 
 supra
 
 , the photo shows two men with four fingers of their left hands extended-a common hand gesture representing the number "4,"-while one man has his right hand in a closed fist with his middle finger extended-a common expression of vulgarity. Nothing in the record suggests that either gesture indicates gang affiliation; besides, the trial judge instructed "the District Attorney's office not to ask any questions about signs or gang affiliation based on this picture." Reviewing the issue
 
 de novo
 
 , we hold that neither the Mustang nor the Gun Photos fall within the ambit of Rule 404 and overrule Defendant's argument on this question.
 

 We likewise reject Defendant's argument that the Mustang and Gun Photos were
 
 *242
 
 inadmissible under Rules 401 and 402. Defendant compares this case to our decision in
 
 State v. Godley
 
 ,
 
 140 N.C. App. 15
 
 ,
 
 535 S.E.2d 566
 
 (2000), holding that trial court erred by allowing the State to use a police officer's firearm as a prop to illustrate the defendant's testimony.
 
 140 N.C. App. at 25
 
 ,
 
 535 S.E.2d at 574
 
 . But in
 
 Godley
 
 , no evidence indicated that the gun used by the defendant bore any relation to the prop gun, other than testimony that the defendant's firearm "[c]ould have been a little bigger."
 
 Id.
 
 at 25,
 
 535 S.E.2d at 574
 
 (alteration in original) (internal quotation marks omitted). Here, there is an evidentiary connection between the photos in question, the crime, and the accused-the Gun and Mustang Photos were obtained from Defendant's phone, show he had access to firearms and the Mustang, and depict him at almost the precise location where the shooting took place. One of the gun photos shows Defendant in possession of a firearm resembling that used in the shooting as described by Monje.
 
 [7]
 
 Because this evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable ... than it would be
 
 *689
 
 without the evidence," N.C. Gen. Stat. § 8C-1, Rule 401 (2017), and in appropriate deference to the determination made by the trial court,
 
 Wallace
 
 ,
 
 104 N.C. App. at 502
 
 ,
 
 410 S.E.2d at 228
 
 , we hold the trial court did not err in admitting the Gun and Mustang Photos as relevant under Rules 401 and 402.
 

 The trial court also did not abuse its discretion in concluding the Gun and Mustang Photos were not subject to exclusion pursuant to Rule 403. Defendant's briefs pay lip service to Rule 403, but he cites no authority for his argument. Defendant's brief assumes the conclusion that the Mustang and Gun Photos were irrelevant; having held to the contrary, we reject this argument as well. While Defendant's briefing does posit that this evidence was grossly prejudicial, such a contention appears to be made in the context of showing prejudicial error-not in the context of a Rule 403 analysis. Thus, having held that the Mustang and Gun Photos were relevant and admissible under Rules 401, 402, and 404, we hold the trial court did not abuse its discretion in ruling the probative value of this evidence was not outweighed by its potential for undue prejudice.
 

 c. Admission of Monje's In-Court Identification
 

 Defendant's final argument asserts that the trial court erred in denying his ID Motion, arguing that the trial court failed to make any conclusions of law and likewise failed to make three findings concerning: (1) the absence of a completed witness confidence statement at a photo line-up; (2) her inability to choose between a photo of Defendant and another man in the photo line-up; and (3) whether she heard Defendant's name while riding with the police to identify the silver Mustang on the day of the shooting. We reject Defendant's argument.
 

 First, the trial court made conclusions of law, stating at the hearing that "[t]he Court would find that the witness's testimony is admissible. It appears to the Court that it would be appropriate for the jury to determine the credibility of this witness and that there's a sufficient basis for the evidence to go before the jury. I would find that the evidence is relevant. I would find, after considering all the information before the Court at this time, that it would survive the balancing test." As to the findings Defendant contends should have been made, there was no conflict in the evidence concerning a missing eyewitness confidence statement or Monje's inability to pick a single picture in the earlier photo line-up; thus, express factual findings on these issues were not required.
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . Lastly, the trial court could not have made a finding that Monje heard Defendant's name while riding with police, as
 
 *690
 
 no evidence was
 
 *243
 
 introduced showing such a fact.
 
 [8]
 
 Assuming
 
 arguendo
 
 that such evidence was in the record, it is relevant not to the admissibility of Monje's testimony but rather to its credibility-a point conceded by Defendant's counsel at oral argument. Because the credibility of an in-court identification is a question for the jury,
 
 Moses
 
 ,
 
 350 N.C. at 767
 
 ,
 
 517 S.E.2d at 869
 
 , Defendant's final argument is overruled.
 

 III.
 
 CONCLUSION
 

 Although the prosecutor in this case failed to comply with the requests of the trial court to enter written orders on Defendant's various motions to suppress, this failure does not render the oral findings and conclusions made by the trial court on the record erroneous. The trial court's oral rulings on the motions are without error, because they state sufficient findings of fact resolving any material conflicts in the evidence and conclusions of law that apply the law to those factual findings. Because the record permits us to conduct "meaningful appellate review of the trial judge's decision" under these circumstances,
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 , Defendant's argument to the contrary is rejected. We further hold that the trial court did not err in admitting the Mustang and Gun Photos pursuant to Rules 401, 402, 403, and 404(a)-(b), nor did it err in admitting Monje's in-court identification of Defendant.
 

 NO ERROR.
 

 Judges DILLON and DAVIS concur.
 

 [1]
 

 The Cell Phone Motion argued only that the cell phone was unlawfully seized from Defendant. It did not argue that the phone or files found thereon were irrelevant, prejudicial, or otherwise inadmissible under our Rules of Evidence.
 

 [2]
 

 Defendant pointed to no conflicts concerning the Photo Line-Up Motion in his principal brief, and identified evidentiary conflicts in his reply brief only in regard to the ID Motion.
 

 [3]
 

 For example, the evidence is uncontroverted that Monje did not execute a witness confidence statement as part of her photo line-up. Because there was no conflict here, no finding as to that fact was required.
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 .
 

 [4]
 

 At oral argument, Defendant's appellate counsel raised potential evidentiary conflicts concerning where Monje said the shooting occurred, why Monje had stopped there, and what interactions Defendant had with the victim at the stop. None of these conflicts was identified in Defendant's appellant brief, or in his reply brief. Assuming
 
 arguendo
 
 that Defendant's argument as to these conflicts are not waived, they do not "potentially affect[ ] the outcome of the suppression motion," and were therefore not material conflicts requiring resolution.
 
 Bartlett
 
 ,
 
 368 N.C. at 312
 
 ,
 
 776 S.E.2d at 674
 
 . Indeed, Defendant's counsel made a conclusory argument concerning this evidence and did not identify how resolution of these conflicts could have potentially affected the trial court's order on the ID Motion. Defendant's counsel instead argued only that it affected Monje's credibility, which is a question for the jury.
 
 Moses
 
 ,
 
 350 N.C. at 767
 
 ,
 
 517 S.E.2d at 869
 
 .
 

 [5]
 

 See, e.g.,
 

 State v. Jordan
 
 ,
 
 216 N.C. App. 112
 
 , 120,
 
 716 S.E.2d 242
 
 , 247 n 2 (2011) (noting that whether waiver of
 
 Miranda
 
 rights was intelligently, voluntarily, and knowingly made is a conclusion of law).
 

 [6]
 

 Defendant notes that several of the trial court's rulings requested the State to draft orders containing the "customary conclusions of law" or "appropriate conclusions of law, including jurisdiction matters." However, as detailed
 
 supra
 
 , each such statement follows an oral order with conclusions of law sufficient to dispense of each motion to suppress, and therefore any additional "customary conclusions of law" would be unnecessary surplusage.
 

 [7]
 

 Monje told Detective Merritt that she saw a "black and very small" gun at the shooting. Each of the Gun Photos shows a black gun in a person's lap. Defendant asserts that the black firearms in the Gun Photos are entirely dissimilar to the description given by Monje; we disagree, as each photo shows at least one gun that could reasonably be characterized as both black and very small. The degree to which this reasonable characterization of the evidence is credible, probative, and ultimately persuasive is, naturally, a question for the jury.
 

 [8]
 

 There was some evidence introduced that police discovered Defendant's name from his Mustang's registration once it was identified by Monje, but nothing in the record indicates that Monje was in the vehicle with police, or in a position to overhear police discussing Defendant's name, when that information was shared between police. To the contrary, Monje testified that she did not know Defendant's name when she gave her statement to Detective Merritt-after Monje had identified the Mustang and Defendant's name had been discovered by authorities. She further testified that she first heard Defendant's name when he was arrested. Detective Merritt similarly testified that neither he nor any other officer mentioned Defendant's name to Monje, and that only a description of the Mustang was broadcast by radio. The officer that ran the Mustang's license plate testified that he communicated the plate number over the radio and that other officers could pull up Defendant's name on their onboard computers, but he did not testify that Defendant's name was ever broadcast aloud.