STATE OF NORTH CAROLINA v. TELLY T. COX

No. COA07-1171

(Filed 3 June 2008)

**1. Trials— sleeping juror—not replaced**

The trial court did not abuse its discretion by denying defendant's request to replace a juror who he asserted had been sleeping during the trial. Defendant had raised concerns during jury selection but accepted this juror, and the court conducted an inquiry and determined that the juror was sufficiently alert to perform her duties as a juror.

**2. Appeal and Error— preservation of issues—motion to dismiss—not renewed at close of evidence**

Defendant waived appellate review of the denial of his motion to dismiss at the close of the State's evidence by not moving to dismiss at the close of his evidence.

**3. Constitutional Law; Criminal Law— failure to move to dismiss at close of evidence—no prejudice**

Defendant was not prejudiced by his counsel's failure to move to dismiss at the close of all of the evidence where the State produced evidence that defendant acted with another to obtain a gun and went to the victim's residence (with the other person having the gun) with intent to rob the victim, any inferences concerning whether defendant was armed or told one victim to dis-

robe were for the jury to determine, and the State met its burden of presenting substantial evidence of the crimes.

Appeal by defendant from judgment entered 22 September 2006 by Judge Russell J. Lanier, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 6 March 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General A. Danielle Marquis, for the State.*

*Richard E. Jester, for the defendant-appellant.*

STEELMAN, Judge.

The trial court did not abuse its discretion in refusing defendant's request to dismiss a juror during the trial. Defendant may not challenge the sufficiency of the evidence upon appeal when he failed to move for dismissal at the close of all the evidence. Because defendant cannot show prejudice under *Strickland,* his ineffective assistance of counsel claim must fail.

Throughout the evening of 31 December 2003 and the early morning hours of 1 January 2004, Chris Brown (Brown) and his girlfriend, Alonza Bedell (Bedell), were cruising Wayne County, consuming alcohol and illegal drugs at various residences. The couple picked up Telly Cox (defendant) in the early morning hours of 1 January 2004, and the three consumed alcohol and smoked "weed." Brown, Bedell, and defendant paid a visit to the Maynard residence, where Shawn Maynard was entertaining his father and his girlfriend, Nicole Jones. Shawn's two children were also present: 8-year-old daughter Bailey and 13-year-old stepson Chae, who recognized Brown from previous visits to the Maynard residence. On this particular visit, Brown stayed only a short time.

When Brown returned to the car, Bedell, Brown, and defendant drove to a friend's home where Brown and Bedell frequently drank and socialized. Bedell lost track of the two men for approximately 30 minutes. Brown called her on her cellphone and told her to come pick him up at Maynard's residence. When Bedell arrived, the two men ran out of the residence, jumped into her car, and told her to drive away. Both men had guns.

Police responded to a 911 call to Shawn Maynard's home and found the bodies of Shawn Maynard and Nicole Jones in the master bedroom. Jones was only partially dressed. Bailey told police that

"two bad men came in and shot and killed my dad and his girl-friend[.]" The glass door of a gun cabinet in the bedroom where the bodies were found had been removed and guns were missing.

The following day, police interviewed Shawn's children. Chae, age 13, gave them Brown's name and identified Brown from a photo line-up. Brown was arrested that same day in blood-spattered clothing. At the time of his arrest, Brown's head was closely shaven.

Police arrested defendant late on the night of 1 January 2004. At the time of his arrest, defendant wore his hair in cornrows. Defendant gave a detailed statement to investigators, in which he admitted accompanying Brown into the Maynard home but claimed that he only acted at Brown's direction and at gunpoint.

On 7 February 2005, defendant was indicted for murder (2 counts), armed robbery, attempted rape, and first degree kidnapping (2 counts). The cases were consolidated for trial. Although defendant was tried non-capitally on the murder charge, he was represented by two attorneys. The cases were tried at the 11 September 2006 criminal session of Wayne County Superior Court.

Bailey Maynard, then 10 years old and a witness to the murders, testified at trial as to the events of 1 January 2004. Bailey stated that she awoke to find "Nicki" (Jones) and a man with cornrows (defendant) in the bedroom where she had been sleeping. The man with cornrows had a gun, which he was pointing at Nicki, and yelling at her to get up on the bed and to take off her shirt. No one else was in the room, and Bailey could see the bald man (Brown) in the living room. Bailey had never seen the man with cornrows before but the bald man had been to the house before. The man with the cornrows pointed the gun at Bailey and told her to get in the closet. From the closet, Bailey heard the bald man and Nicki yelling, then a gunshot, then Nicki yelling "No[,]" then another gunshot. When Bailey heard the front door close, she left the closet. She tried to wake her father. Then she dialed 911.

At the close of the State's evidence, the trial court dismissed both kidnapping charges. Defendant asserted a duress defense as to the murder and robbery charges. Eight defense witnesses testified to events occurring in the hours prior to and following the time of the murders. As to the robbery charge, the jury was charged on the theories that defendant acted as a principal or in concert with Brown. As to the murders, the jury was charged only as to felony murder, with

the underlying felony being either robbery with a dangerous weapon or attempted rape.

On 22 September 2006, the jury returned a verdict of guilty on the remaining four charges: murder (2 counts), armed robbery, and attempted rape. The trial court sentenced defendant to two consecutive life sentences on the murder charges, and arrested judgment on the robbery and attempted rape charges. Defendant appeals.

[1] In his first argument, defendant contends that the trial court failed to protect his constitutional right to a jury of twelve persons when it denied his request to excuse a juror whom he asserts was sleeping during the trial. We disagree.

In North Carolina, trial by a jury of twelve persons in a criminal case is an unwaivable right of the accused. *State v. Hudson*, 280 N.C. 74, 79, 185 S.E.2d 189, 192 (1971). The question of whether a juror shall be excused and replaced by an alternate is left to the discretion of the trial court, whose actions are reviewed under an abuse of discretion standard. *State v. Nelson*, 298 N.C. 573, 260 S.E.2d 629 (1979); *see also State v. Lovin*, 339 N.C. 695, 715-16, 454 S.E.2d 229, 241 (1995) (quoting *State v. Nelson*, 298 N.C. 573, 593, 260 S.E.2d 629, 644 (1979) for the premise that "decisions relating to the competency and service of jurors are not reviewable on appeal absent a showing of abuse of discretion, or some imputed legal error."). In *Lovin*, our Supreme Court found no abuse of discretion in the court's refusal to replace a juror despite testimony from two law enforcement officials that the juror had appeared confused, required directions to the courtroom on multiple occasions, slept a good part of the time, and failed to review a photo exhibit that was published to the jury. *Lovin*, 339 N.C. at 715-16, 454 S.E.2d at 240-41.

Following closing arguments, defense counsel raised concerns to the trial court that two jurors, juror 5 and juror 8, had been sleeping during parts of the trial. Because defendant brings forward only his challenge to juror 8, we limit our review to that juror. Defense counsel argued to the trial court that, during closing arguments, he had closely observed juror 8, whom he believed had fallen asleep and been inattentive. Outside of the presence of the jury, the trial court heard from both the State and defendant. Juror 8 was then brought into the court room and the trial court conducted the following inquiry:

THE COURT: —the reason that I've asked you to come in is that it has been brought to my attention that at some point dur-

ing the trial you appeared to have dozed off, to somebody. Did you doze off?

JUROR NUMBER 8: If I did, it was, yeah, for a second. I mean, it's . . .

THE COURT: Well, the question is: Did you hear enough of the trial to be able to perform your duty as a juror? Because, you know, if you did doze off and miss something, you know, it may be unfair to one side or the other if you happened to have missed something at that particular time.

JUROR NUMBER 8: I don't remember doing it. I know I jerk. I have bad hands, and I sit here and pull on them and I jerk. But I— I don't remember a time after when we were selected in the jury—and it was really hot in here. I don't remember a time after that. I won't tell, you know . . .

THE COURT: The question that I really have: Do you—do you feel like—that you have a command of the testimony sufficient to perform your duty as a juror?

JUROR NUMBER 8: I feel like I have, you know, heard everything.

THE COURT: Okay. Well, I mean, you know—

JUROR NUMBER 8: Pin me down. I mean, give me a person I might have done that—

THE COURT: I can't because I don't know, because, you know, it's entirely possible for people to listen with their eyes closed, you know, and frequently people do that. I just want to make certain that—you know, that the decision-makers, which is the jurors [sic], heard the facts.

JUROR NUMBER 8: (Affirmative nod.) Well, I think I did. But, it's okay.

The trial court concluded:

[T]he Court has inquired of jurors number 5 and 8 whether they were sufficiently alert to fully participate in the accumulation of the knowledge disclosed by the facts that were testified to in open court to perform their duties as a juror. Each has assured the Court that they have done so. Therefore, I'm going to deny the defense motion to replace the jurors.

Defendant challenges the denial only as to juror 8.

A review of the record reveals that defense counsel first raised concerns regarding juror 8 during jury selection. Nonetheless, defense counsel neither challenged her for cause nor moved to strike her. Instead, defense accepted her as a juror. Defendant now argues before this Court that the trial court abused its discretion in allowing juror 8 to deliberate when it was sufficiently aware of the issue to closely monitor her during the trial. Characterizing the juror's responses as "equivocal at best[,]" he contends that these facts are distinguishable from *Lovin* because defense counsel personally observed the sleeping juror. We find these arguments unpersuasive. We hold that *Lovin* controls these facts, and, as in *Lovin*, we can find no abuse of discretion in the court's inquiry and determination that juror 8 was sufficiently alert to perform her duties as a juror. This argument is without merit.

**[2]** In his second argument, defendant contends that, because the State failed to prove beyond a reasonable doubt that he participated in a "joint enterprise" with Brown, his motion to dismiss at the close of the State's evidence should have been granted. We disagree.

Rule 10(b)(3) of the North Carolina Rules of Appellate Procedure state, in relevant part:

> [I]f a defendant fails to move to dismiss the action or for judgment as in case of nonsuit at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged.

N.C. R. App. P. 10(b)(3) (2007). The record shows that defendant moved to dismiss all of the charges at the close of the State's evidence. However, following his presentation of evidence, defendant failed to move to dismiss the charges or to renew his challenge to the sufficiency of the evidence. Consequently, he has waived his right to appellate review of the denial of his motion to dismiss the action at the close of the State's evidence. N.C. R. App. P. 10(b)(3). This argument is dismissed.

In his third argument, defendant contends that his two attorneys rendered ineffective assistance of counsel by failing to move for dismissal of all charges at the close of all the evidence. We disagree.

**[3]** In a three-part argument, defendant contends that the attorney's failure to make a routine motion to dismiss at the close of all the evidence violated his right to have the sufficiency of the evidence weighed before submission of the charge to the jury. He further con-

tends that his attorney's failure to preserve these arguments constituted ineffective counsel and that the deficient performance prejudiced his appeal by waiving his right to appellate review.

A criminal defendant's Sixth Amendment right to counsel has been interpreted as the right to effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 654, 80 L. Ed. 2d 657, 664 (1984). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. at 698. In the matter *sub judice*, defendant fails to show a reasonable probability that counsel's failure to move for dismissal of the charges would have resulted in a different outcome.

In weighing the sufficiency of the evidence, the trial court considers all evidence admitted at trial, whether competent or incompetent:

> . . . in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies in the evidence are for resolution by the jury. *State v. Witherspoon*, 293 N.C. 321, 237 S.E.2d 822 (1977). The trial judge must decide whether there is substantial evidence of each element of the offense charged. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

*State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). The role of the trial judge is merely to establish that substantial evidence exists of each element of the offense. *Id.* The jury resolves any conflicts in the evidence. *Id.*

Before discussing each of defendant's arguments, we first note that defendant argues the evidence in the light most favorable to his version of the events of 1 January 2004. This is not the appropriate standard of review, *Brown*, 310 N.C. at 566, 313 S.E.2d at 587, and we decline to so view the evidence.

In the first part of his argument, defendant contends that the State's evidence was that "[o]nly Chris Brown was armed when the men arrived [at the Maynard residence]." Two witnesses for the State testified that, before visiting the Maynard residence, defendant accompanied Brown to another drug house, where the two men spent 30-60 minutes in a back room with Brown's drug dealer, and emerged with Brown toting a shotgun. During the time that the two men were in the back room, defendant watched as Brown loaded the gun. This evidence raises a reasonable inference that the two men acted together to obtain a gun, then went to the Maynard residence with the intent to rob Maynard of his firearms. We conclude that this testimony is substantial evidence supporting the trial court's charge on armed robbery.

In the second part of his argument, defendant contends that his version of events and the evidence of duress are not rebutted by evidence, only by conjecture and speculative testimony by a child who was in a closet during the alleged crimes. As discussed *supra*, Bailey testified that defendant had a gun and ordered Jones at gunpoint to take off her shirt. Although he does not directly challenge Bailey's competency as a witness, defendant contends that Bailey's failure to testify to any breaking into the gun cabinet establishes that the breaking "could only have occurred while she was in the closet" and he thus could not have ordered Jones to take off her shirt at gunpoint. He argues that, as Brown was the only armed man and "Bailey did not hear two voices commanding Nicole to remove her clothes[,]" defendant cannot be guilty of the crimes charged.

In his statement to police, defendant gave this version of events at the Maynard residence leading up to the murders:

Chris came back to the bedroom with the white lady, Shawn's friend, and Shawn. He was pointing the shotgun at them. When they got into the bedroom, Chris told the white female to take her clothes off. I think he was going to rape her. She took her shirt off. I'm not sure if she had a blouse or a pullover on. She took it off and was naked from the waist up. He, Chris, told her, the lady, to take her pants off. She started to take her pants off. Shawn was telling Chris to, quote, chill out, end quote. This is nonsense, end quote. Shawn started to walk toward the door, headed to the bathroom in the hallway near the master bedroom. Shawn was still hollering at Chris, and that is when Chris shot him.

Defendant's version of these events was directly contradicted by Bailey's testimony that he pointed a gun at Jones and yelled at her to take off her shirt and get up on the bed. Bailey's testimony is substantial evidence that defendant was armed and threatening both Jones and Bailey with a gun. Any inferences concerning whether defendant was armed or told Jones to disrobe were for the jury to determine. *Brown*, 310 N.C. at 566, 313 S.E.2d at 587.

In the remainder of his argument, defendant challenges the sufficiency of the evidence to show that he committed any crime. Assuming *arguendo* that defendant had preserved this argument, it is without merit. When viewed in the light most favorable to the State, the evidence showed that both Brown and defendant participated in the robbery and attempted rape of Jones. Bailey testified that defendant pointed a gun at Jones and yelled at her to take off her shirt and get up on the bed. Jones' body was only partially clothed; she had no shirt or bra on and her pants were unsnapped and unzipped. This physical evidence, coupled with defendant's statement to police, supported the State's theory that the murders occurred when Maynard tried to stop the intruders from raping Jones, which occurred in the course of the armed robbery.

With respect to the robbery, defendant's thumbprint was found on the gun cabinet where the stolen guns were locked, and the stolen firearms, shotgun shells, and crossbow were found in a car outside defendant's home. Defendant admitted to investigators that he broke into the cabinet and removed the guns. The State introduced evidence that defendant was armed with a gun, which he used to control and threaten the female victim and the child during the course of the robbery. This evidence was more than sufficient to meet the State's burden of presenting substantial evidence of each element of the robbery and that defendant was the perpetrator or acted in concert with Brown.

It is well-established that proof of the elements of the underlying felony suffices to establish the necessary intent for felony murder. *See, e.g., State v. Moore*, 284 N.C. 485, 494, 202 S.E.2d 169, 175 (1974) (" 'A murder which is committed in the perpetration or attempted perpetration of robbery, rape, arson, [etc.], is murder in the first degree, irrespective of premeditation or deliberation or malice.' ") (quoting 4 N.C. Index 2d, Homicide, Sec. 4, 1947 Ed.). Because the State met its burden of producing evidence that the murders occurred in the course of the robbery or an attempted rape, the felony murder charge was properly submitted to the jury.

We hold that the defendant was not prejudiced by counsel's failure to move to dismiss the charges at the close of all the evidence. This argument is without merit.

Defendant's brief fails to address the remaining assignments of error. Pursuant to N.C. R. App. P. 28(b)(6) (2007), these are deemed abandoned.

NO ERROR.

Judges McCULLOUGH and ARROWOOD concur.