IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-36

Filed 5 February 2025

Pasquotank County, Nos. 20 CRS 1372-73, 20 CRS 51101

STATE OF NORTH CAROLINA

v.

BRANDON KASON BOYD

Appeal by Defendant from judgments entered 15 March 2023 by Judge Jerry R. Tillett in Pasquotank County Superior Court. Heard in the Court of Appeals 5 November 2024.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Keith Clayton, for the State.*
>
> *Hynson Law, PLLC, by Warren D. Hynson, for Defendant.*

WOOD, Judge.

Brandon K. Boyd ("Defendant") appeals from judgments entered upon a jury verdict finding him guilty of first-degree murder, possession of a firearm by a felon, and interfering with an electronic monitoring device. On appeal, Defendant argues the trial court erred by violating his right to a speedy trial, by failing to inquire about or replace Juror 7, and by giving an erroneous clarification of jury instructions. For the reasons set forth below, we hold Defendant received a fair trial free from prejudicial error.

## I.  Factual and Procedural Background

On 5 February 2020 Defendant pleaded guilty pursuant to an Alford plea to common law robbery, a felony.  Under the terms of his probation, Defendant was subject to electronic monitoring for six months.

On 18 October 2020 Kaleb Bilger ("Bilger") was found slumped in the front passenger seat of a gray sedan, unconscious and gunshot.  He was pronounced dead at the scene.  After an investigation by the Pasquotank Police Department, a warrant was issued for Defendant's arrest.  On 11 November 2020, law enforcement located Defendant in Westchester County, New York.  He waived extradition to North Carolina where he was indicted in Pasquotank County on charges of first-degree murder, possession of a firearm by a felon, and interfering with an electronic monitoring device.

On 5 October 2021, Defendant filed a motion for a speedy trial and reasserted his right to a speedy trial on 1 August 2022.  On 25 October 2022, Defendant filed a motion to dismiss due to violation of his right to a speedy trial.  The trial court denied the motion.  Defendant remained in custody continuously from his arrest on 11 November 2020 until trial two years and four months later.

Defendant was tried in Pasquotank County Superior Court on 15 March 2023, and the jury found Defendant guilty on all charges.

At trial, the evidence tended to show the following:

On 18 October 2020 at approximately 2:00 p.m., Elizabeth City police officers responded to a call from River Landings Apartments reporting multiple shots fired. Officer Stokley responded to the scene and identified two separate blood trails and multiple spent shell casings in the vicinity of building 106. He set up a crime scene perimeter and began speaking with witnesses.

Stacy Waters ("Waters") reported that she saw two black males arguing near building 106, one light-skinned, the other dark-skinned and 5' 6" to 5' 7" tall. She stated the light-skinned male walked away from the dark-skinned male and then she heard multiple gun shots. She stated the dark-skinned male ran towards building 105 and could possibly be in apartment C. In her original statement Waters noted she could not see the suspect's face.

At trial Waters testified that she saw Justyn Wilson ("Wilson") and Defendant talking and that Defendant appeared agitated. A short time later she heard raised voices and observed Defendant arguing with Wilson. Wilson began walking to the breezeway near building 106 and Defendant followed. She then heard six-to-eight-gun shots. Wilson was still standing out front when Bilger came stumbling out saying he was shot and needed to get to the hospital. Another man in a silver four-door car helped Bilger into the car and drove away. Defendant tucked a small black handgun into his waistband and ran towards building 105.

When questioned during cross-examination about how she could identify Defendant two and a half years later when she had reported to investigating officers

that she could not see his face, she stated she could tell today "from the back of his walk, his stance."

Vanessa Brooks ("Brooks") also testified about what she witnessed on 18 October 2020. Brooks stated she heard men arguing, looked out the window of her apartment, and called 911 because the argument was so loud. She recognized Bilger and Defendant from her time as a substitute teacher. She also saw a third person dressed in a hoodie, whom she could not identify. The men continued to argue and move between the buildings. She turned her head to grab her phone and heard gunshots. When she looked back, she could not see Bilger anymore. Defendant was standing with his back to her and then ran towards building 106. In her statement to the police on the day of the shooting, Brooks did not name Defendant; however, in the summer of 2022, Brooks told prosecutors that Defendant was the shooter.

Officer Mateo testified that she was dispatched to the Fountain View Apartments on 18 October 2020 for suspicious conditions. When she arrived, Officer Mateo found a gray sedan parked at the entrance with blood coming from the passenger area and blood droplets on the passenger door of the vehicle. An unconscious male with blood on his face sat slumped in the front passenger seat. Emergency medical services pronounced him dead at the scene.

Officer Knowles testified that he conducted crime scene analyses at both crime scenes, River Landings Apartments and Fountain View Apartments. He collected blood samples from both scenes as well as ten shell casings from the River Landings

scene. He identified the shell casings as .22-caliber. In addition, he found 8.2 pounds of a green leafy substance in a suitcase in Bilger's vehicle that he identified as marijuana. Knowles did not send the green leafy substance to the lab for identification or the shell casings for DNA or fingerprinting analysis. However, he did send the shell casings from the crime scene and the .22-caliber Federal brand bullets and Glock firearm box recovered from Defendant's bedroom to the State Crime Lab in Raleigh.

During trial defense counsel reported to the court that many people had noticed Juror number 7 appeared to be sleeping. The trial court stated, "she could have been resting her eyes or sleeping or taking a break. It was kind of a boring section." Defense counsel requested that the court replace Juror 7 with the alternate juror due to concern that Juror 7 had missed some of the evidence. The trial court denied the request stating, "I'm not inclined to do so at this juncture. I mean, as far as I know, she was resting her eyes as do I sometimes."

Defendant's probation officer Kevin Combs ("Combs") testified he received a strap tamper alert for Defendant's ankle monitor on 18 October 2020 and attempted to contact Defendant. The monitoring company reported Defendant's home as the last known location of the ankle bracelet. While on his way to Defendant's home, the Elizabeth City Police Department contacted Combs to inform him that Defendant was a suspect in a shooting. No one was at the residence when Combs arrived. Combs' partner contacted Defendant's mother, the homeowner, and waited for her to

arrive home. Defendant's mother unlocked the home and gave consent for the probation officers to enter to search for the ankle monitoring bracelet. The ankle bracelet was eventually located on the roof of the home.

When called as a State's witness, Wilson testified that Bilger had traveled to California to get a better price on marijuana. Defendant had invested $800.00 in the marijuana purchase and had been led to believe that Bilger and his partner were apprehended by police at the D.C. airport on 17 October 2020. However, Bilger pulled up to the River Landings Apartments on 18 October 2020 around noon. Wilson, a friend named DJ, and Defendant were standing outside when he arrived. Defendant approached Bilger to ask about his money, but Bilger told him he would have to wait because he had just lost fifty grand. Defendant became visibly upset and walked away while implying he was going to cut off his ankle monitoring bracelet. Approximately five minutes later, Defendant returned in a car with a man named Tyke. Defendant approached Bilger, pulled out a pistol, and loaded a bullet into the chamber. Defendant's voice cracked as he asked Bilger why he would do this after all he had done for him and repeated that he needed his money. Bilger walked away with Defendant following. As Bilger walked up the steps Defendant started shooting. Wilson pushed DJ into the closest apartment. By the time Wilson and DJ came back outside everyone was gone and only a puddle of blood remained on the ground.

After closing arguments, the trial court provided instructions to the jury for both first-degree and second-degree murder. During its instruction to the jury, the

trial court stated, "[s]econd-degree murder differs from first-degree murder in that the State need not to prove a specific intent to kill, premeditation, or deliberation." After the jury began its deliberations, the jury sent a message to the trial court requesting to hear the difference between first- and second-degree murder. The trial court conferred with the prosecutor and defense attorney about the instruction that should be given, stating:

> The [c]ourt will give the instruction again generally as contained in 206.14 regarding first degree murder and the other alternative lesser included second-degree murder, and the [c]ourt will give these instructions: First degree murder is the unlawful killing of a human being with malice and with premeditation and deliberation. Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. Okay? And then I will instruct all of the entire instruction including the mandate on all charges. Anybody have anything to say about that?

There were no objections. The jury returned to the court room and the trial court then delivered the clarifying instructions to the jury. The jury resumed deliberation. Thereafter, defense counsel stated to the trial court, "you said first degree murder is malice and premeditation and deliberation. You didn't say intent to kill, which is part of that." The trial court then clarified that the distinction between first- and second-degree murder was premeditation and deliberation. Defense counsel continued to argue that the instruction was too simplistic, but the trial court noted that it was the exact instruction the defense had requested and was consistent with the pattern jury instruction. After reading the instruction again defense counsel

conceded that it was correct. The jury found Defendant guilty of all charges: first-degree murder, possession of a firearm by a felon, and interfering with an electronic monitoring device. Defendant gave notice of appeal in open court.

## II.    Analysis

Defendant raises three issues on appeal: the trial court's purported violation of his right to a speedy trial, the trial court's failure to inquire about or replace Juror 7, and the trial court's erroneous clarification of the jury instructions.

## A.  Right to a Speedy Trial

Our Constitution guarantees criminal defendants the right to a speedy trial. "The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (citation omitted).

> The right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not *per se* prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial.

*State v. McKoy*, 294 N.C. 134, 140, 240 S.E.2d 383, 388 (1978) (citing *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187 (1972).

In *Barker v. Wingo* the U.S. Supreme Court laid out "a four-factor balancing test to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated. These factors are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *State v. Spinks*, 277 N.C. App. 554, 562, 860 S.E.2d 306, 314-15 (2021) (cleaned up). None of the factors are essential or required, rather they are related factors that must be considered in light of the circumstances on a case-by-case basis. The court must engage in a "difficult and sensitive balancing process." *Barker v. Wingo*, 407 U.S. 514, 533, 92 S.Ct. 2182, 2193 (1972). The U.S. Supreme Court in *Barker* determined that this process starts with the length of the delay, which "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530, 92 S.Ct. at 2192.

The U.S. Supreme Court clarified what would constitute a delay that is "presumptively prejudicial" in their decision in *Doggett* stating,

> [d]epending on the nature of the charges, the lower courts have generally found post-accusation delay "presumptively prejudicial" at least as it approaches one year. We note that, as the term is used in this threshold context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry.

*Doggett v. U.S.*, 505 U.S. 647, 652, n. 1, 112 S.Ct. 2686, 2691, n. 1 (1992).

9

Our North Carolina Supreme Court has repeatedly quoted the language from *Doggett* and held consistent with the U.S. Supreme Court that when a delay approaches a year it may not be "enough in itself to conclude that a constitutional speedy trial violation has occurred, [yet] this delay is clearly enough to cause concern and to trigger examination of the other factors." *State v. Webster*, 337 N.C. 674, 679, 447 N.C.2d 349, 351 (1994); *see also State v. Flowers,* 347 N.C. 1, 27, 489 S.E.2d 391, 406 (1997); *State v. Grooms,* 353 N.C. 50, 62, 540 S.E.2d 713, 721 (2000).

This Court has consistently relied upon the precedent set forth by the U.S. Supreme Court in *Barker* and *Doggett* as well as decisions from our North Carolina Supreme Court. In *State v. Chaplin*, we quoted our Supreme Court's decision in *State v. Webster* holding that a delay of nearly three years "[w]hile not enough in itself to conclude that a constitutional speedy trial violation has occurred, . . . [the] delay is clearly enough to cause concern and to trigger examination of the other factors." *State v. Chaplin,* 122 N.C. App. 659, 664, 471 S.E.2d 653, 656 (1996) (quoting *State v. Webster*, 337 N.C. 674, 679, 447 N.C.2d 349, 351 (1994)). Similarly, in *State v. Washington*, we cited the U.S. Supreme Court's opinion in *Doggett v. U.S.* and held that a delay of four years and nine months was enough to trigger examination of the other *Barker* factors. *State v. Washington*, 192 N.C. App. 277, 283, 665 S.E.2d 799, 803-04 (2008).

Most recently, this Court addressed this issue in both *Wilkerson I* and *Wilkerson II. State v. Wilkerson,* 242 N.C. App. 253, 775 S.E.2d 925, 2015 WL

4081964 (2015) (unpublished) *(Wilkerson I)*; *State v. Wilkerson,* 257 N.C. App. 927, 810 S.E.2d 389 (2018) *(Wilkerson II)*. In *Wilkerson I* this Court noted that a delay approaching a year is presumptively prejudicial and enough to trigger all of the *Barker* factors and held that the trial court erred by failing to consider all of the *Barker* factors. *State v. Wilkerson,* 242 N.C. App. 253, 775 S.E.2d 925, 2015 WL 4081964 (2015) (unpublished).

On remand the trial court acknowledged the *Barker* factors finding that while the amount of time in the delay was "noteworthy" it was "not *per se* prejudicial." The delay was forty-four months. The case returned to this Court which then held the trial court erred in its finding and made it clear that no specific length of time is "*per se* prejudicial," but the analysis of this first factor was in favor of the Defendant and therefore "triggers the need for analysis of the remaining three *Barker* factors." *State v. Wilkerson,* 257 N.C. App. 927, 930, 810 S.E.2d 389, 392 (2018) *(Wilkerson II)*.

It is clear, based on significant federal and North Carolina precedent, that when a delay approaches a year, it is enough to cause concern that the delay may be unreasonable and to trigger examination of all four *Barker* factors. However, the trial court's determinations are not required to be reduced to a written order.

> If a written order is not required and an oral order may be sufficient in certain circumstances, the failure to go above and beyond that which is required by law does not render an otherwise lawful order erroneous. In other words, a minimally sufficient order is still exactly that—sufficient—even if more was ordered or requested by the trial court. Given this standard, the trial court committed reversible

> error only if: (1) there are conflicts in the evidence that the trial court failed to resolve either orally or in writing, through an explicit factual finding, or (2) the trial court failed to make the necessary conclusions of law on the record.

*State v. Dixon*, 261 N.C. App. 676, 682, 821 S.E.2d 232, 238 (2018) (cleaned up).

On 8 November 2022 the trial court held a hearing on Defendant's Motion to Dismiss for Speedy Trial Violations. At the end of counsel's arguments the trial court stated,

> All right. I will tell you that I will make a -- I will announce and give you a forecast of my ruling today so that there won't be any delay in everybody attempting to get prepared as soon as possible. I intend to deny that motion. I will make -- I reserve the right to make full, that is, plenary findings of fact and conclusions of law. I may ask the State or one member to make a first draft of that, but I will make the final revisions and order myself, but I will consider the factors of Barker v. Wingo and its progeny in North Carolina. I do find that -- I do not determine at this juncture that there is a presumptive prejudice, but I will rule in the alternative as well considering the other factors. However, I will set this case for trial.

No written order was ever entered. The trial court noted that it "intended" to deny the motion but also clearly stated that it "will" consider the factors of *Barker* in the future, not that it already had. The only finding the trial court made was that it "[did] not determine at this juncture that there [was] a presumptive prejudice." However, the trial court qualified that finding by also stating that it "[would] rule in the alternative as well considering the other factors." Notwithstanding the trial court's

12

reservation of its right to enter an order in accordance with its preliminary determination or its right to change its mind if it found the *Barker* factors persuasive, the trial court never entered an order.

Based on the trial court's indeterminant statements, it cannot be determined from the record evidence whether the trial court resolved the issue of presumptive prejudice. Precedent dictates that a full consideration of all four *Barker* factors is triggered when post-accusation delays approach one year; the delay in this case was two years, four months. *Doggett v. U.S.*, 505 U.S. 647, 652, n. 1, 112 S.Ct. 2686, 2691, n. 1 (1992).

Additionally, the record does not reflect whether the trial court ever considered any of the *Barker* factors. Because the trial court's oral statements do not meet the "minimally sufficient" baseline this Court has set for oral orders, the issue of alleged violations of a constitutional right to a speedy trial must be remanded to the trial court for a determination inclusive of findings of fact and conclusions of law.

## B. Replacement of Juror 7

Defendant contends that the failure to replace Juror 7 was both an abuse of discretion and impacted his constitutional right to a unanimous verdict. Defendant did not raise the constitutional issue at trial. He raises it for the first time on appeal. "[A] purported error, even one of constitutional magnitude, that is not raised and ruled upon in the trial court is waived and will not be considered on appeal." *State v.*

*Anderson,* 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002). Our Supreme Court repeatedly has held "constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Garcia,* 358 N.C. 382, 415, 597 S.E.2d 724, 748 (2004); *State v. Watts,* 357 N.C. 366, 372, 584 S.E.2d 740, 745 (2003). Because Defendant failed to raise his constitutional argument at trial, and the trial court had no opportunity to hear or rule on the issue, Defendant cannot raise a constitutional argument for the first time on appeal.

"The question of whether a juror shall be excused and replaced by an alternate is left to the discretion of the trial court, whose actions are reviewed under an abuse of discretion standard." *State v. Cox,* 190 N.C. App. 714, 717, 661 S.E.2d 294, 297 (2008). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In Re T.A.M.,* 378 N.C. 64, 71, 859 S.E.2d 163, 168 (2021).

When juror misconduct is alleged, which includes a juror falling asleep or failing to attend to the proceedings, "it is the trial court's responsibility to make such investigations as may be appropriate, including examination of jurors when warranted, to determine whether misconduct has occurred and, if so, whether such conduct has resulted in prejudice to the defendant." *State v. Salentine,* 237 N.C. App. 76, 81, 763 S.E.2d 800, 804 (2014) (cleaned up). "The trial court is vested with the discretion to determine the procedure and scope of the inquiry. On appeal, we give great weight to its determinations [of] whether juror misconduct has occurred . . . ."

14

*Id*. (cleaned up). The trial court's decision "should only be overturned where the error is so serious that it substantially and irreparably prejudiced the defendant, making a fair and impartial verdict impossible." *State v. Gurkin,* 234 N.C. App. 207, 211, 758 S.E.2d 450, 454 (2014) (cleaned up).

In the case sub judice, Defense counsel reported to the trial court approximately halfway through the trial that Juror Number 7 "seemed to be sleeping" and he was concerned she had "missed some evidence." Defense counsel requested that the juror be replaced. The trial court responded that "she could have been resting her eyes, or sleeping, or taking a break" and that it was not inclined to replace the juror at that time because "as far as I know, she was resting her eyes." Trial testimony continued for another day and a half. Defendant did not renew his objection concerning Juror Number 7 and no further concerns were noted in the record.

Defendant alleges the trial court erred by failing to investigate the issue after it had been raised. However, "there is no absolute rule that a court must hold a hearing to investigate juror misconduct upon an allegation . . . . Further, an examination of the juror involved in alleged misconduct is not always required, especially where the allegation is nebulous." *State v. Gurkin,* 234 N.C.App. 207, 212, 758 S.E.2d 450, 454 (2014) (cleaned up). The trial court sits in the best position to evaluate the significance of the allegation against the juror and acted within its discretion in declining to conduct further inquiry. Furthermore, there is no evidence

that Defendant was prejudiced in any way by Juror Number 7 having closed her eyes for a short time. The trial court did not err in its refusal to replace Juror Number 7.

**C. Clarification of Jury Instructions**

At the close of evidence, the trial court instructed the jury with all necessary information for their consideration including the pattern jury instructions for first- and second-degree murder. After beginning deliberations, the jury sent a note to the trial court asking for clarification on the difference between first- and second-degree murder. After a conference with the parties, the trial court stated it would give pattern instruction 206.14 regarding first- and second-degree murder. During the formal clarifying instruction, the trial court gave the full and complete instruction, including all references on intent to kill. The trial court omitted, however, the intent to kill requirement when giving the final mandate, a summary of the charge, to the jury before sending them back to deliberations. Defendant concedes he did not raise further objections to the instructions or to the jury's return to deliberations.

Defendant contends alleged jury instruction errors are automatically preserved, despite a failure to object at trial. Defendant cites to this Court's decision in *Richardson* to support his contention that "[w]hen a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection." *State v. Richardson*, 270 N.C. App. 149, 153, 838 S.E.2d 470, 474 (2020). We disagree. In *Richardson* we addressed the specific scenario of the trial court omitting verbiage

from instructions during its final mandate after giving the complete instruction. We held because "the trial court did not completely fail to give the agreed-upon instruction, Defendant's argument that the trial court erroneously delivered the mandate was not preserved for appellate review without further request or objection." *Id.* at 155, 838 S.E.2d at 475 (cleaned up).

Such is the scenario here. The trial court gave the full instruction, including all references on intent to kill. The trial court omitted the intent to kill requirement only when giving the final charge to the jury. Since the trial court did not "completely fail" to give the instruction, we cannot conclude Defendant's argument was preserved for review absent objection at trial.

Failure to preserve an alleged error for review shifts our analysis to a plain error standard of review.

> "In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."

N.C.R. App. P. 10(a)(4) (2023); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), cert. denied, 555 U.S. 835, 129 S.Ct. 59 (2008). "[T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723

S.E.2d 326, 334 (2012).

Defendant contends the trial court provided inconsistent instructions in its explanation of first- and second-degree murder. We disagree. Our Supreme Court has held that when a trial court properly instructs the jury concerning all elements of first-degree murder but fails to restate the intent to kill element during the final mandate, it is not contradictory but at most "incomplete at one important point." *State v. Stevenson*, 327 N.C. 259, 266, 393 S.E.2d 527, 530 (1990). Further, the Court in *Stevenson* determined that even with an "incomplete" instruction when there is significant evidence of guilt the trial court's inadvertent omission of the intent to kill element from the final mandate does not rise to the level of plain error. *Id.* at 266, 393 S.E.2d at 531.

Here, after the jury requested clarification, the trial court properly instructed the jury on all elements of the crime including the "intent to kill" element which it referenced at least seven times. Additionally, as in *Stevenson*, significant evidence of Defendant's guilt was presented to the jury. Therefore, the trial court's "incomplete instruction" did not create a fundamental error sufficient to breech the plain error standard.

## III. Conclusion

Notwithstanding that the trial court erred when it failed to make the necessary findings and conclusions of law to constitute a lawful order on Defendant's Motion to Dismiss for alleged violation of his constitutional right to a speedy trial, we conclude

18

the error did not negatively impact the trial process. For the foregoing reasons, we conclude Defendant received a fair trial free from prejudicial error. We remand this case to the trial court with directions as follows:

The presiding judge shall make the necessary findings and conclusions of law to support an order on Defendant's Motion to Dismiss. As in *Clark*, "if the trial court determines that defendant's right to a speedy trial was violated, then the court shall find the facts and enter an order vacating judgment, setting aside the verdict, and dismissing the indictment[s] as to [all] charges." *State v. Clark*, 201 N.C. App. 319, 330, 689 S.E.2d 553, 561 (2009). If the trial court determines that Defendant's right to a speedy trial was not violated, the court shall find the facts and conclusions of law and enter an order denying Defendant's motion to dismiss and order commitment to issue in accordance with the judgment entered at the 15 March 2023 session of Pasquotank County Superior Court. It is so ordered.

NO PREJUDICIAL ERROR IN PART; REMANDED FOR ORDER ON SPEEDY TRIAL ISSUE.

Judge GRIFFIN concurs by separate opinion.

Judge STADING concurs in the majority and the concurring opinion.

19

GRIFFIN, Judge, concurring.

Defendant contends the trial court erred by denying his motion to dismiss because he was denied a speedy trial. Defendant argues in the alternative, and the majority agrees, the trial court should have made findings of fact and conclusions of law in support of denying Defendant's motion. I concur with the result the majority reaches because precedent demands it. However, I write separately to highlight inconsistent precedents which changed the applicable law.

The majority relies on *State v. Wilkerson*, to hold:

> a trial court errs when making determinations "without considering all of the *Barker* factors and making appropriate findings." *State v. Wilkerson*, 257 N.C. App. 927, 929, 810 S.E.2d 389, 391 (2018).

After reviewing the relevant precedent, it becomes apparent *Wilkerson* misapprehends and misapplies the law established in *State v. Barker*; specifically, by failing to acknowledge and give proper deference to the threshold inquiry of whether the delay is presumptively prejudicial–only after which full examination of the *Barker* factors is required.

Both the law of North Carolina and the Sixth Amendment to the United States Constitution "guarantee those persons formally accused of crime the right to a speedy trial." *State v. Avery*, 302 N.C. 517, 521, 276 S.E.2d 699, 702 (1981) (citations omitted). *See also* U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"). The United States Supreme

Court first recognized the right as fundamental and incorporated its protections against state actors in *Klopfer v. State of North Carolina* through the Fourteenth Amendment's Due Process Clause. 386 U.S. 213, 222–23 (1967). The Court revisited the issue in *Barker v. Wingo*, 407 U.S. 514, 522 (1972). Recognizing "the right to speedy trial is a more vague concept than other procedural rights" with an "amorphous quality" that does not lend itself to a brightline test, the Court set forth a four-factor balancing test to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated. 407 U.S. 514, 521–23, 526, 529–30; *id.* at 527 ("The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived[.]"). The test, requiring analysis of: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant, provides courts with a mechanism through which they may determine and weigh the respective roles which both the state and the defendant played in preventing the swift administration of justice. *Id.* at 530.

However, in addition to being one of the factors, the length of the delay "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* *See also Doggett v. U.S.*, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from

'presumptively prejudicial' delay[.]" (citation omitted)). Whether the length of the delay warrants a full *Barker* analysis is fact-specific and "dependent upon the peculiar circumstances of the case," *Barker*, 407 U.S. at 530–31; the determination of which is "within the sound discretion of the trial court," *State v. Pippin*, 72 N.C. App. 387, 392, 324 S.E.2d 900, 904 (1985) (citations omitted). Nevertheless, the law allows for longer delays where the nature of the crime demands more extensive efforts by law enforcement and the State. *See Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). *See also Pippin*, 72 N.C. App. at 392, 324 S.E.2d at 904 (collecting cases on the issue).

Regardless of the length of the delay, "the burden is on an accused who asserts denial of his right to a speedy trial to show the delay was due to the neglect or willfulness of the prosecution." *State v. Dietz*, 289 N.C. 488, 494–95, 223 S.E.2d 357, 361 (1976) (citations omitted). When a defendant makes this assertion based upon conjectural and conclusory allegations, "the trial court is not always required to conduct an evidentiary hearing and make findings of facts and conclusions of law." *State v. Chaplin*, 122 N.C. App. 659, 663, 471 S.E.2d 653, 656 (1996) (citing *Dietz*, 289 N.C. at 495, 223 S.E.2d at 362). Moreover, as the majority notes, a trial court is not required to enter a written order but may adjudicate the issue orally when there is no conflict in the evidence. *State v. Dixon*, 261 N.C. App. 676, 682, 821 S.E.2d 232, 238 (2018). Bookending this analysis is the fact that "[a] criminal defendant who has

caused or acquiesced in a delay will not be permitted to use it as a vehicle in which to escape justice." *State v. Tindall*, 294 N.C. 689, 695–96, 242 S.E.2d 806, 810 (1978).

This Court's line of opinions in *State v. Howell*, 211 N.C. App. 613, 711 S.E.2d 445, (2011), *State v. Wilkerson*, 242 N.C. App. 253, 775 S.E.2d 925, 2015 WL 4081964 (2015) (*Wilkerson I*), and *State v. Wilkerson*, 257 N.C. App. 927, 810 S.E.2d 389 (2018) (*Wilkerson II*), misconstrue this well-established precedent.

In *Howell*, we addressed a situation in which the trial court dismissed a defendant's criminal charges after he moved for dismissal based upon various statutory violations relating to the timeliness of his trial. *Howell*, 211 N.C. App. at 614, 711 S.E.2d at 447. The trial court dismissed the case in part because the defendant's Sixth Amendment right to a speedy trial had been violated, but ultimately the grounds upon which it made its decision were unclear. *Id.* at 616–17, 711 S.E.2d at 448. Accordingly, we held "[i]n order to conclude there has been a Sixth Amendment violation of a defendant's right to a speedy trial, the trial court must examine and consider *all* the <u>*Barker*</u> factors listed above." *Id.* at 618, 711 S.E.2d at 449 (citation omitted).

In *Wilkerson I*, however, we faced an inapposite situation where a defendant alleged the trial court erred by not dismissing his charges. *Wilkerson I*, 2015 WL 4081964, at *1. There, the trial court heard two separate motions alleging the defendant's constitutional rights to a speedy trial had been violated. *Id.* at *15. Ruling on the second motion following a hearing, the trial court stated "[t]he

4

defendant has made an insufficient showing to justify a dismissal under speedy trial grounds. The motion to dismiss is denied." *Id*. at *16. Turning our precedent in *Howell* on its head, and without discussing the role the first factor plays in triggering a full *Barker* analysis, we held:

> The trial court erred by summarily denying Defendant's motion without considering all of the Barker factors and making appropriate findings. Therefore, we must remand this case to the trial court for a proper application of the *Barker* test. *See Howell*, 211 N.C. App. at 620, 711 S.E.2d at 450 (remanding motion to dismiss based on speedy trial grounds to trial court due to its failure to "conduct a full inquiry into all of the Barker factors before making its determination.").

*Id*. The misapplication of the law in *Wilkerson I* is obvious when considering the Supreme Court's statement in *Barker* that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. *See also Doggett*, 505 U.S. at 651–52 ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay[.]"). Moreover, the *Wilkerson I* Court failed to appreciate the material differences between dismissing criminal charges against a defendant and denying their motion. A conclusion that a defendant's Sixth Amendment right to a speedy trial has been violated reasonably requires an in-depth and nuanced analysis as "[t]he amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been

5

deprived." *Barker*, 407 U.S. at 522. Ruling against a defendant's motion to dismiss for an alleged Sixth Amendment violation where there is not presumptive prejudice, however, allows our justice system to run its course efficiently and is a matter "initially within the sound discretion of the trial court." *Pippin*, 72 N.C. App. at 392, 324 S.E.2d at 904 (citations omitted).

Subsequently, in *Wilkerson II*, this Court construed the *Wilkerson I*'s holding to mean it found presumptive prejudice, despite the *Wilkerson I* Court never stating so. Specifically, the *Wilkerson II* court stated "[t]his Court had previously remanded this matter to the trial court for a full review and application of the <u>*Barker*</u> factors, indicating the length of delay was sufficient to trigger such a review." *Wilkerson II*, 257 N.C. App. at 392, 810 S.E.2d at 930 (citing *Wilkerson I*, 2015 WL 4081964, at *15–*16). At this point, it is worth noting the gap in logic here. If our remand in *Wilkerson I* indicated "the length of delay was sufficient to trigger" a full *Barker* analysis, then the trial court's order in the first instance also indicated the opposite: it did not find the length of delay presumptively prejudicial. In fact, the trial court initially stated "[t]he defendant has made an insufficient showing to justify a dismissal under speedy trial grounds." *Wilkerson I*, 2015 WL 4081964, *16. On remand, the trial court plainly and clearly explained its reasoning for finding the delay was not presumptively prejudicial:

> From the date of the defendant's arrest on July 2, 2010 until the beginning of trial on April 21, 2014 is over three years and nine months. This amount of time is noteworthy,

6

> but considering all of the matters necessarily involved in the preparation by the prosecution and the defense of this case involving a first degree murder charge with co-defendants, including pretrial discovery, investigation and analysis of crime scene and crime laboratory analysis, it is not *per se* prejudicial.

Again, this being a matter "initially within the sound discretion of the trial court[,]" *Pippin*, 72 N.C. App. at 392, 324 S.E.2d at 904 (citations omitted), there was "no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. In contradiction to our *Wilkerson I* and *Wilkerson II* holdings, the inquiry ought to have stopped upon the initial finding that there was not presumptive prejudice. This misapprehension and misunderstanding deserves clarification so that our courts do not continue to rely on this apparent error.

Nonetheless, I concur with the result the majority reaches for two reasons. First, despite its erroneous foundations, we are bound by the precedent created by *Wilkerson I* and *II*. Second, as the majority states, because of "the trial court's indeterminant statements, it cannot be determined whether the trial court resolved the issue of presumptive prejudice." In light of the trial court's indefinite language, remanding the order solely for entry of findings on whether Defendant has shown presumptive prejudice is proper. If the trial court determines there was presumptive prejudice, then it should engage in a full *Barker* analysis.